CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

5/23/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| **JANUARY CREWS-SANCHEZ,** | ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | |
| **FRITO-LAY, INC.,** | ) ) | Case No: 6:21CV00030 |
| **Serve:** | ) ) | |
| CT Corporation | ) | **JURY TRIAL DEMANDED** |
| 4701 Cox Rd., Suite 285 | ) | |
| Glen Allen, Virginia 23060 | ) ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW, Plaintiff January Crews-Sanchez (hereinafter, "Ms. Crews-Sanchez" or "Plaintiff"), by counsel, and states as her Complaint against Defendant Frito-Lay, Inc. (hereinafter, "Frito-Lay" or "Defendant"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA"), the Employee Retirement Income and Security Act, as codified under Title 29 U.S.C. §§ 1001-1461 ("ERISA"), the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2. This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's claims pursuant to the Virginia Occupational Health and Safety Act ("VOSH"), Va. Code § 40.1-51.2:1, and

Virginia's Whistleblower Retaliation Act, Va. Code § 40.1-27.3, are so related to her claims involving original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

3. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise, occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

4. Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

5. As it relates to Plaintiff's ADA and ADEA claims, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated February 26, 2021 attached hereto as **EXHIBIT A**. Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

6. Regarding Plaintiff's VOSH claim, Plaintiff timely filed a complaint with the Virginia Department of Labor and Industry ("VDOLI"). Plaintiff received a letter from VDOLI dated March 23, 2021, attached hereto as **EXHIBIT B**, providing Plaintiff the right to sue pursuant to Va. Code § 40.1-51.2:1.

## II. THE PARTIES

7. Ms. Crews-Sanchez, a resident of Campbell County, Virginia, at the times relevant here was, and continues to be, in the protected age class[1] as defined by the ADEA.

8. Ms. Crews-Sanchez was hired by Defendant on or about February 6, 2006.

---

[1] Ms. Crews-Sanchez was born in 1975. Her birthdate is withheld under the Local Rules of the Western District of Virginia.

9. Frito-Lay, Inc. is a national snack food company employing over 55,000 individuals across the United States. Frito-Lay, Inc.'s principal office is located in Plano, Texas. Frito-Lay, Inc. owns and operates the facility at which Ms. Crews-Sanchez was employed, located at 230 Jefferson Ridge Parkway in Lynchburg, Virginia.

10. Defendant has engaged in a pattern and practice of discriminating against its older employees by placing them on unwarranted performance improvement plans, moving them to undesirable shifts, and/or terminating their employment, based solely upon a desire to retain a younger work force.

11. Throughout her history of employment with Defendant, Ms. Crews-Sanchez worked as an Environmental Health and Safety Manager. Ms. Crews-Sanchez has only ever received positive work performance evaluations, never received any sort of workplace discipline, nor was she ever placed on a performance improvement or development plan.

12. Ms. Crews-Sanchez is disabled. Specifically, Ms. Crews-Sanchez suffers from a medical condition that suppresses her immune system, increases the likelihood of susceptibility to infections and related severity of symptoms, and impairs several of Ms. Crews-Sanchez's daily life activities and/or functions. However, Ms. Crews-Sanchez could perform the essential functions of her position with Defendant at all pertinent times pursuant to this Complaint. At all times relevant, Defendant was aware of Ms. Crews-Sanchez's disability.

**A. Plaintiff Denied an Accommodation**

13. On or about March 22, 2020, at the beginning of the COVID-19 ("COVID") pandemic, Ms. Crews-Sanchez provided Human Resources Manager Jessica Fowler and Site Director Aubrey Wells, who worked as Ms. Crews-Sanchez's direct supervisor, with a

letter from her physician that disclosed Ms. Crews-Sanchez's disability and compromised immune system and requested the reasonable accommodation of permitting Ms. Crews-Sanchez to work remotely. Ms. Crew-Sanchez could perform her work remotely without an undue burden to Frito-Lay.

14. Ms. Fowler and Director Wells ignored Ms. Crews-Sanchez's requests, and Ms. Crews-Sanchez was required to continue working in person in Defendant's Lynchburg facility.

**B. Plaintiff's Job: Maintain a Safe Work Environment During COVID**

15. As part of her essential duties, Ms. Crews-Sanchez was tasked with ensuring that Defendant's Lynchburg facility followed all pertinent state COVID-19 ("COVID") mandates and CDC guidelines. This was a monumental task as the Lynchburg facility employs over five hundred (500) employees.

16. In June of 2020, an employee reported being ill with COVID. Ms. Crews-Sanchez immediately set out to perform a contact trace and to inform numerous individuals that they needed to follow quarantine guidelines. Ultimately, Ms. Crews-Sanchez had to inform approximately thirty-two (32) employees that they needed to quarantine.

17. In July of 2020, Ms. Crews-Sanchez became aware that a second employee had been observed in close proximity to the sickened employee, without having worn a mask, in violation of state and federal guidelines. Moreover, Ms. Crews-Sanchez learned that this employee had recently traveled to Myrtle Beach, South Carolina, at a time when the city was a COVID hotspot.

18. A newspaper article was published in the local paper regarding a charity baseball game. This second co-worker was photographed by the local paper giving

another individual a "high-five," all while not wearing a facemask. This employee should have been locked down in quarantine. Given this photograph, news travelled quickly, and many employees of Defendant knew that this co-worker was violating quarantine restrictions.

19. Ms. Crews-Sanchez knew the General Manager of the local baseball team and inquired as to whether the team had required participants of the charity game to sign a waiver. Ms. Crews-Sanchez informed the General Manager that an employee of Defendant had played at the game when the employee should have been on quarantine for traveling to a COVID hotspot. Ms. Crews-Sanchez did not reveal the name of the employee to the General Manager. Numerous employees of Defendant participated in the charity baseball game.

### C. Plaintiff Reports Safety and Health Concerns; Protected Activities

20. On July 7, 2020, Ms. Crews-Sanchez discussed the above-referenced matter with Human Resources Manager Jessica Fowler and Site Director Aubrey Wells. Ms. Wells was Ms. Crews-Sanchez's supervisor. Ms. Crews-Sanchez reported her safety concerns regarding the activities of this employee, and how it could affect the safety and health of the other workers at the Lynchburg facility. Ms. Crews-Sanchez exercised, on behalf of the other employees at the Lynchburg facility, advocacy for the right to work in an environment that met the health and safety standards as required by the law and internal policies of Defendant.

21. Two hours later, Human Resources Manager Fowler called Ms. Crews-Sanchez into a meeting with herself and Director Wells. Ms. Fowler asked Ms. Crews-Sanchez if she wished to change any part of her "story."

22. Ms. Crews-Sanchez was confused as she had previously reported the facts of the situation and steps needed to be taken to ensure co-worker safety. Ms. Fowler then suspended Ms. Crews-Sanchez from employment.

23. On July 10, 2020, Defendant terminated the employment of Ms. Crews-Sanchez. When Ms. Crews-Sanchez inquired as to the reason, Ms. Fowler insisted that Defendant was terminating her employment because she "shared that an employee went out on vacation," presumably with the General Manager of the baseball team.

24. On July 10, 2020, Defendant terminated the employment of Ms. Crews-Sanchez without just cause.

**D. Defendant Intentionally Interferes with Plaintiff's Health Insurance**

25. During the entirety of her employment, Defendant provided Ms. Crews-Sanchez with a family health insurance policy administered pursuant to ERISA.

26. Though she was terminated on July 10, 2020, Ms. Crews-Sanchez continued to receive paychecks from Defendant through August 31, 2020. These paychecks illustrated that funds were deducted from Ms. Crews-Sanchez's income to pay premium costs of her health insurance.

27. Based on her reasonable understanding that her earned funds were being applied to the costs of her insurance, Ms. Crews-Sanchez and her family received medical treatment that would normally be a covered expense of her policy.

28. However, despite the evidence to the contrary, Ms. Crews-Sanchez received a letter in September from Defendant indicating that her benefits, including her health insurance, had ceased on July 20, 2020.

29. At no time did Defendant provide timely notice to Ms. Crews-Sanchez regarding the cessation of her health benefits.

30. Ms. Crews-Sanchez telephoned corporate Defendant's Human Resources Department and was informed that the Human Resources Department at the Lynchburg facility was to blame regarding the mishandling of her benefits.

31. Due to the lapse in her insurance coverage, healthcare providers are seeking recovery of over $11,000 in medical expenses from Ms. Crews-Sanchez. These costs would normally have been covered expenses pursuant to her health insurance policy.

32. Further, in an act of additional bad faith, Defendant demanded backpay from Ms. Crews-Sanchez from July 10, 2020 through August 26, 2020.

33. Upon information and belief, Defendant intentionally interfered with an established right of Ms. Crews-Sanchez to utilize her ERISA administered health insurance.

34. In addition to pecuniary losses, Ms. Crews-Sanchez's credit history has been marred by Defendant's intentional interference with a right guaranteed to Plaintiff pursuant to ERISA and retaliatory demand for backpay.

35. Any reason provided by Defendant for Ms. Crews-Sanchez's termination is pretextual, as her termination occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon Ms. Crews-Sanchez's age, disability, and/or protected activities, and is indicative of Defendant's bias against older, disabled employees. Indeed, the short temporal proximity between the time Ms. Crews-Sanchez requested disability-related accommodations and her termination supports a finding that Ms. Crews-Sanchez's termination was pretextual.

36. Upon information and belief, Ms. Crews-Sanchez's position was taken over by a non-disabled person who is substantially younger than Ms. Crews-Sanchez.

37. As a direct and proximate result of Defendant's actions, Ms. Crews-Sanchez has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT I: VOSH RETALIATION IN VIOLATION OF VIRGINIA CODE § 40.1-51.2:1

38. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

39. Plaintiff engaged in the protected activity of complaining about workplace safety and health violations to her supervisor.

40. Defendant enacted an illegal retaliatory plan to terminate Plaintiff's employment due to her participation in such statutorily protected activities.

41. Defendant retaliated against Plaintiff in violation of Virginia Code § 40.1-51.2:1 for engaging in protected activities by terminating Plaintiff's employment.

42. Defendant treated Plaintiff differently, and less favorably, than other employees who had not engaged in such statutorily protected activities.

43. Based upon the acts and/or omissions of Defendant, Plaintiff suffered discriminatory and retaliatory acts which included, but were not limited to, suspension and termination from employment.

44. All of these acts are in violation of Va. Code § 40.1-51.2:1.

45. Plaintiff was wrongfully terminated on or about July 10, 2020, predicated upon her complaints of workplace health and safety in violation of Va. Code § 40.1-51.2:1.

46. Pursuant to Va. Code § 40.1-51.2:2, Plaintiff has exhausted all administrative remedies.

## COUNT II: WHISTLEBLOWER RETALIATION
## IN VIOLATION OF VIRGINIA CODE § 40.1-27.3

47. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

48. Plaintiff engaged in the protected activity of reporting a violation of state or federal law and/or regulation to a supervisor in good faith.

49. The Governor of Virginia, pursuant to Va. Const. Art. V and Va. Code § 44-146.17, signed Executive Order 51 (2020), and others, in effect at all times relevant, mandating the wearing of masks indoors, social distancing of at least six (6) feet, quarantine after out of state travel, and other CDC recommendations in response to the COVID pandemic.

50. The Whistleblower Act provides that an "employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment" because the employee engaged in a protected activity.

51. Plaintiff was wrongfully terminated on or about July 10, 2020, predicated upon her complaints of workplace health and safety in violation of Va. Code § 40.1-27.3.

## COUNT III: FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADA

52. Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint.

53. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, pursuant to the ADA.

54. Specifically, and at all times relevant, Plaintiff suffered from a disability that impaired several of Plaintiff's daily life activities and/or functions.

55. At all times relevant, however, Plaintiff could perform the essential functions of her position(s) with Defendant with or without an accommodation.

56. Prior to her request for an accommodation, Plaintiff was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of Defendant.

57. Defendants failed to accommodate Plaintiff's disability in violation of the ADA by refusing to allow her to work remotely and failing to adequately engage in the interactive process. This accommodation was reasonable and could have been provided by Defendant without suffering an undue hardship or burden.

### COUNT IV: DISCRIMINATION & RETALIATION IN VIOLATION OF THE ADA

58. Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint.

59. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, pursuant to the ADA.

60. Specifically, and at all times relevant, Plaintiff suffered from a disability (a health condition that impaired her immunity) that impaired several of Plaintiff's daily life activities and/or functions.

61. In the alternative, Plaintiff was regarded by Defendant as having such impairments and regarded as being disabled.

62. At all times relevant, however, Plaintiff could perform the essential functions of her position(s) with Defendant with or without an accommodation.

63. Prior to her request for an accommodation, Plaintiff was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of Defendant.

64. Defendant would not have terminated Plaintiff's employment but for her disability and/or her request for a reasonable accommodation.

65. Any reason provided by Defendant for the treatment of Plaintiff was pretextual, as Plaintiff's work performance was excellent.

66. At all times relevant, the employees of Defendant acted within the scope of *respondeat superior*, thus making Defendant liable for their actions.

67. At all times material hereto, Defendant engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

**COUNT V: DISCRIMINATION IN VIOLATION OF THE ADEA**

68. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

69. At the time of her termination from employment from Defendant, Plaintiff was within the protected age class and protected from age discrimination by the ADEA.

70. Prior to Plaintiff's termination from employment, Plaintiff was performing her work at a satisfactory level and meeting the legitimate business expectations of Defendant.

71. During her employment with Defendant, Plaintiff experienced unwelcome discrimination based upon her age, ultimately resulting in Plaintiff's termination from employment.

72. Defendant would not have terminated Plaintiff, or taken the other discriminatory actions against him, but for Plaintiff's age.

73. Defendant has engaged in a pattern and practice of terminating older workers in order to maintain a youthful workforce in violation of the ADEA. Upon information and belief, statistical data will prove this allegation.

74. Upon information and belief, after Plaintiff's termination from employment, her job duties were taken over by one or more Defendant employees, all of whom are substantially younger than Plaintiff.

75. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

## COUNT VI: INTERFERENCE IN VIOLATION OF ERISA § 510

76. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

77. At all times relevant to this Complaint, Defendant provided an ERISA administered employee welfare benefit plan, to-wit, a health insurance policy as a condition of employment to Plaintiff and her family.

78. Defendant unlawfully interfered with Plaintiff's attainment of an entitled right pursuant to ERISA, by concealing the cessation of Plaintiff's benefits and producing fraudulent and false documentation alleging that Plaintiff still received her entitled right to the benefit.

79. Exhaustion of any administrative step prior to litigation would be futile.

80. At all times, Defendant acted with the specific intent to interfere with Plaintiff's rights pursuant to ERISA.

WHEREFORE, Plaintiff January Crews-Sanchez prays for judgment against Defendant Frito-Lay, Inc., and for injunctive relief, equitable relief, backpay, reinstatement and/or front pay, compensatory damages, liquidated damages, punitive damages, together with prejudgment interest from the date of Ms. Crews-Sanchez's discharge from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.  IN THE EVENT DEFENDANT INTENDS TO SEEK ARBITRATION OF THIS MATTER, IN WHOLE OR IN PART, PLAINTIFF RESERVES THE RIGHT TO A JURY TRIAL UPON THE ISSUE OF WHETHER ARBITRATION MAY BE ENFORCED.

Respectfully Submitted,

**JANUARY CREWS-SANCHEZ**

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB #92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
119 Norfolk Avenue, S.W., Suite 330
Warehouse Row
Roanoke, VA  24011
Tel:  540-283-0802
brittany@strelkalaw.com
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*